IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENISE WILLIAMS | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NUMBER |
| v. | § | |
| | § | 3:07-CV-0010-P |
| DALLAS COUNTY SCHOOLS | § | |
| | § | |
| Defendant. | § | |
| | § | |

**ORDER**

Now before the Court is a Motion for Summary Judgment filed by Defendant Dallas County Schools ("DCS"). Plaintiff Denise Williams filed her Response on February 21, 2008. After reviewing the briefing and applicable law the Court now GRANTS Defendant's Motion for Summary Judgment.

**I.  BACKGROUND**

Plaintiff Denise Williams was employed by Defendant DCS at the Pat Rainey Service Center ("Service Center"), as a bus driver, from January 2005 until her termination in February 2006. (Pl.'s Resp. at 4.) Throughout her employment at DCS, Plaintiff was disciplined for certain actions including: failing to show for work, inappropriate conversation over DCS radio, handbook non-compliance, unprofessional behavior, and unauthorized use of her DCS bus that ultimately led to her termination. (Def.'s Mot. at 3–11.) Plaintiff claims that these actions were taken against her in retaliation for claims that she made against her supervisor Jimmy Blades. (Pl.'s Resp. at 12)

In February 2005, Plaintiff asserts that her supervisor Jimmy Blades showed her a sexually offensive email. (Def.'s Mot. at 3.) Though no written grievance regarding the offensive email has been presented, Plaintiff asserts that she expressed to Blades that she was offended. Plaintiff further asserts that in March or April of 2005, Blades rubbed her shoulders while she was typing on a computer. *Id.* In May 2005, in response to the shoulder rubbing, Plaintiff complained to Blades, that she did not like the way he "touched her or spoke to her." (Pl.'s Resp. at 4.) According to Plaintiff, she also made an oral report of the shoulder rubbing and offensive email incidents to Vincent Fields, the then Area Director for the Service Center . (Def.'s Mot. at 4.) Although Plaintiff claims that she submitted a written grievance regarding the shoulder rubbing incident, no such copy has been produced and DCS contends that no such document exists. *Id.*

Plaintiff asserts that after she made her complaints regarding the email and shoulder rubbing incidents, Blades treatment toward her changed. (Pl.'s Resp. at 4.) After Plaintiff's alleged complaints, the following incidents occurred:

- May 11, 2005 – Plaintiff was written up for failing to call the Service Center prior to not showing up for work. On this same date, Plaintiff filed a complaint against Blades complaining about his write up of that day. (Def.'s Mot. at 4.)

- June 13, 2005 – Evonne Stewart, a dispatcher, filed a grievance against Plaintiff regarding harassment and slanderous remarks. On this date, Plaintiff was again written up for failing to call the Service Center prior to not showing for work. Further, on this date, Blades wrote a memo regarding Plaintiff's lack of respect and unprofessional conduct. Lastly, on this date, Plaintiff filed an employee grievance against Blades for unprofessional conduct. (Def.'s Mot at 4–5.)

- June 15, 2005 – Fields wrote-up Blades for failing to properly perform his job functions. Further, on this date, Plaintiff was written up for handbook non-compliance for wearing sandals. In response, on this date, Plaintiff filed a grievance against Blades for his write-

up regarding her wearing of sandals.  (Def.'s Mot at 5.)

- August 23, 2005 – Plaintiff filed a complaint against Blades for his allegedly unfair treatment.  (Def.'s Mot at 6.)

- August 24, 2005 – Plaintiff filed a claim against Blades for harassment and retaliation. These complaints were in regard to allegations that Blades was discrediting Plaintiff to other employees and changing Plaintiff's routes.  (Def.'s Mot at 6.)

- September 13, 2005 – Plaintiff filed a grievance against Blades alleging that he marked her absent for a whole day when she only indicated she would be absent for her morning route.  (Def.'s Mot at 7.)

- September 14, 2005 – Plaintiff filed a grievance against Ms. Leigh, the field trip supervisor, requesting "a fair share of field trips."  (Def.'s Mot at 7.)

- November 9, 2005 – Plaintiff was written up for handbook non-compliance for having a dirty bus.  (Def.'s Mot at 7.)

- December 14, 2005 – Plaintiff filed a complaint regarding assault by co-workers and her disappointment about her employment experience at DCS.  (Def.'s Mot at 7.)

- January 13, 2006 – Plaintiff finished her assigned route to Kahn Elementary School, but failed to complete her routes to Quintanilla Middle School and Nolan Estes.  Instead, Plaintiff drove her son, in her DCS bus to Lancaster Middle School, a school not on her assigned route.  Prior to this date, Plaintiff had been counseled by Ron Joplin, the new area director for the Service Center, about the unauthorized use of her bus.  Therefore, on this date Plaintiff was suspended five days for handbook non-compliance, for failing to follow instructions from dispatch, making an unauthorized stop, and failing to call dispatch.  (Def.'s Mot. at 9–10.)

- February 17, 2006 – After Plaintiff returned from her suspension, she again engaged in unauthorized use of her DCS bus.  Thereafter, Joplin suspended Plaintiff indefinitely pending an investigation for unauthorized use of DCS assets.  (Def.'s Mot. at 10.)

- February 23, 2006 – Joplin terminated Plaintiff for her unauthorized use of a DCS vehicle.  (Def.'s Mot. at 11.)

- March 10, 2006 – Plaintiff filed a grievance challenging her termination.  (Def.'s Mot. at 11.)

- March 27, 2006 – Plaintiff's request for reinstatement as a DCS bus driver was denied.

(Def.'s Mot. at 11.)

- April 10, 2006 – Plaintiff filed a grievance appealing the March 27, 2006 decision, requesting $300,000, full back pay, no further retaliation, and reassignment of Blades. (Def.'s Mot. at 11.)

- May 4, 2006 – Rick Sorrells, DCS Superintendent, affirmed the March 27, 2006 decision. (Def.'s Mot. at 11.)

- March 10, 2006 – Plaintiff filed a charge of discrimination with the EEOC alleging retaliation. (Def.'s Mot. at 11.)

Plaintiff asserts that these facts demonstrate her engagement in protected activity followed by a retaliatory adverse employment action being taken against her in the form of termination. Defendants claim that Plaintiff was not participating in protected activity under Title VII. They also assert, that even if Plaintiff was engaged in protected activity, she cannot establish that participation in such activity caused her termination. Further, Defendants offer that Plaintiff cannot demonstrate that the reason stated by the Defendants for her termination was pretextual. As such, Defendants assert that summary judgment is appropriate.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that

demonstrate such absence. *See Celotex*, 477 U.S. at 323. However, all evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts demonstrating a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *See id.* at 249–50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *see also Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence." (citing *Celotex*, 477 U.S. at 324)). Further, the court has no duty to search the record for evidence of genuine issues. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which that evidence supports his or her claim." *Id.*

    **B.**    **Retaliation**

Under Title VII, it is "an unlawful employment practice for an employer to discriminate

against any of his employees . . . because [the employee] has opposed a practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.. 42 U.S.C. § 2000e-3(a). A Plaintiff alleging Title VII retaliation must establish a causal link between their protected activity and their termination. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414–15 (5th Cir. 2003) A causal link can be established in two ways: either by presenting direct evidence of retaliatory motive or by providing circumstantial evidence that creates a rebuttable presumption of retaliatory motive. *Id.* Where the plaintiff provides only circumstantial evidence of causation, the burden-shifting framework set out in *McDonnell Douglas* applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under that framework, the employee must first make a prima facie case establishing the three elements of retaliation. This prima face case is satisfied by the production of evidence; persuasion is not necessary at this stage. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005).

In order to survive a motion for summary judgement, a Title VII plaintiff alleging retaliation has the burden of establishing a prima facie case by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802–04; *Haynes v Penzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000). To establish a prima facie case for retaliation, a plaintiff must show: (1) the employee participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007);

*Irby v. Sullivan*, 737 F.2d 1418, 1426 (5th Cir. 1984).[1]

The prima facie case, once established, raises a presumption of retaliation and shifts the burden of production to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *McCoy*, 492 F.3d at 557. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. *Id.* If the employer meets its burden, the presumption of discrimination created by the prima face case disappears, and the plaintiff is left with the ultimate burden of proving that the protected activity was the but-for cause of the adverse employment action. *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). The plaintiff can carry this burden by proving that the employer's proffered reason is not true, but instead is a pretext for the real retaliatory purpose. *McCoy*, 492 F.3d at 557. In other words, "the plaintiff must rebut each . . . non-retaliatory reason articulated by the employer." *Id.* If Plaintiff fails to carry either of her burdens regarding the prima facie case or pretext, then summary judgment for the Defendant is appropriate.

---

[1] At first glance, the ultimate issue in an unlawful retaliation case-"whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII"-seems identical to the third element of the plaintiff's prima facie case-"whether a *causal* link exists between the adverse employment action and the protected activity. *Long v. Eastfield College*, 88 F.3d 300, 305 (5th Cir. 1996). However, the standards of proof applicable to these questions differ significantly. *Id.* The ultimate determination in a unlawful retaliation case is whether the conduct protected by the Title VII was a "but for" cause of the adverse employment decision. *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985). In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct. *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984). However, the standard for establishing the "causal link" element of the plaintiff's prima facie case is much less stringent. *See McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116–17 (5th Cir. 1983) (holding plaintiff's evidence sufficient to meet causation element of prima facie case but insufficient to prove ultimate question of "but for" causation). The Fifth Circuit has further established that a plaintiff need not prove her protected activity was the sole factor motivating the employer's challenged decision in order to establish the "causal link" element of the prima facie case. *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 857 (5th Cir. 1982).

III.  ANALYSIS

    A.    **Plaintiff's Prima Facie Case**

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must show (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse action. *McCoy*, 492 F.3d at 556–57.

        1.    **Plaintiff's Protected Activity**

A protected activity is "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, or participating in any investigation, proceeding, or hearing under Title VII." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (citing 42 U.S.C. § 2000e-3(a)).  The Fifth Circuit has established that "to satisfy the protected activity requirement, an employee must oppose conduct made unlawful by Title VII; complaining of unfair or undesirable treatment not addressed by Title VII will not suffice." *Richard v. Cingular Wireless, LLC*, 233 Fed Appx. 334 (5th Cir. 2007).

In the instant case, Plaintiff asserts that she clearly engaged in protected activity evidenced by her claim of sexual harassment in May of 2005, and further "when she continued to complain weekly and monthly about retaliation and harassment by her supervisor, Blades." . (Pl.'s Resp. at 8.)  The May of 2005 sexual harassment claim referenced by Plaintiff is in regard to the February 2005 offensive email incident and the March or April 2005 shoulder rubbing incident.  In both instances, Plaintiff expressed to Blades that she was offended and that she wanted these actions to stop. (Def.'s Br. at 11–13.)  The act of complaining to Blades would not

be considered protected activity as the Fifth Circuit has established that "asking the alleged harasser to stop the harassment does not constitute a protected activity. *Lemaire v. Louisiana*, 480 F.3d 383, 389 (5th Cir. 2007) (citing *Frank v. Harris County*, 118 Fed. Appx. 799, 804 (5th Cir. 2004) (upholding summary judgment against a plaintiff when the only purported protected activity was the express rejection of sexual advances)).

However, there is evidence that in May 2005 Plaintiff properly took her complaints to Fields, the then area director. (Pl.'s Resp. at 5.) Evidence of this action is illustrated by Fields' subsequent investigation and ultimate removal of Plaintiff from Blades' supervision. *Id.* Further, the testimony of both Plaintiff and Fields confirms their discussion of the issue. (Pl.'s Resp. at 5; Def.'s App. at 145.) Defendant asserts that because there is no written copy of Plaintiff's complaint, none exists. However, Defendant offers no authority that would prohibit the protection of an oral sexual harassment claim under Title VII. Contrary to Defendant's assertion, Title VII protects a person who engages in an activity in opposition to any practice rendered unlawful by the statute. 42 U.S.C. § 2000e-3(a). This includes making a charge, testifying, or participating in any investigation, proceeding, or hearing under Title VII. *Id.* When viewing the evidence and reasonable inferences to be drawn therefrom in the light most favorable to the Plaintiff, as the party opposing this Motion, it is evident that the Plaintiff has asserted a claim of sexual harassment to the proper authority within DCS. Such a claim, is a proper charge opposing a practice rendered unlawful by Title VII. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) (stating that "the purpose of section 2000e-3's participation clause is to

protect the employee who utilizes the tools provided by Congress to protect her rights."))

Therefore, the Court concludes that the Plaintiff has engaged in protected activity.

### 2.     Plaintiff's Adverse Employment Action; Causal Link

It is undisputed that an adverse employment action did occur in this instance, specifically, Plaintiff's termination from DCS. As such, the Court will consider this prong of Plaintiff's Prima Facie case to be established.

Therefore, all that is yet to be substantiated regarding Plaintiff's prima facie case is the causal link between the protected activity and the adverse action. At the prima facie stage, "the standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard." *Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 191 (5th Cir. 2001). Nevertheless, Plaintiff must produce some evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation. *Id.*

Plaintiff contends, that a causal connection exists because "[she] complained up to the month of her termination." (Pl.'s Resp. at 9). Plaintiff's termination occurred in February 2006, while the true protected activity asserted occurred in May of 2005.[2] Plaintiff's assertion, is that the myriad of complaints filed by her during her time at DCS are evidence of the retaliation that she suffered subsequent to her complaint against Blades. Put differently, that each of Plaintiff's grievances exemplifies a relevant instance of Defendant's retaliatory motive that ultimately resulted in Plaintiff's discharge.

Viewing the evidence in the light most favorable to the Plaintiff, it is apparent that certain

---

[2] The oral sexual harassment complaint to Fields.

actions were taken against her following her complaint against Blades. However, none of the complaints logged by Plaintiff, evidencing the actions during this time period would constitute protected activity. These complaints are better characterized as examples of Plaintiff's unsatisfaction with her employment situation. None of which would warrant protection under Title VII.[3] Therefore, the Court is unable to conclude that each complaint exhibits a retaliatory motive as Plaintiff suggests.

It is Plaintiff's burden to establish a causal connection between the protected activity and the adverse employment action. To do so, Plaintiff would need to provide evidence linking the May 2005 protected activity and the February 2006 termination. As a number of jurisdictions have established however, including the Fifth Circuit, this nine month gap may very well be too remote in time to suggest retaliation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (noting that the temporal proximity in question must be very close); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (four month period insufficient); *Russel v. Univ. of Tex. of the Permian Basin*, 234 Fed. Appx. 195, 206 (5th Cir. 2007) (holding that a six-month gap between a complaint and the alleged adverse employment action is too large to infer causation). Considering the nine month gap between the protected activity and the termination and Plaintiff's inability to proffer further protected activity more closely linked in time to the termination, the Court concludes that a causal connection has not been provided. Therefore,

---

[3] None of the complaints identified by Plaintiff, except the May complaint to Fields, actually mention any sexually-related actions or comments by Blades (or anyone else).

Plaintiff has failed to meet her burden of establishing a prima facie case and summary judgment for the Defendant is appropriate.

### B. Defendant's Reason for Termination; Pretext

#### 1. Defendant's Legitimate Reason for Termination

Assuming Plaintiff had fulfilled her burden of establishing a prima facie case, further analysis would entail the following:

The prima facie case, once established, raises a presumption of retaliation and shifts the burden of production to the employer to articulate a legitimate, non-retaliatory reason for the employment action. *McCoy*, 492 F.3d at 557. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. *Id.* Here, Defendant claims that without retaliation it legitimately terminated Plaintiff for unauthorized use of her DCS bus. (Def.'s Reply at 6). On more than one occasion, Plaintiff failed to complete her assigned route, instead using her bus to take her son to school, a school not on her route. (Def.'s Mot. at 9–10.) After being counseled and suspended for this behavior, Plaintiff was ultimately terminated. *Id.*

With these facts established, it is proper to conclude that the Defendant has articulated a legitimate, non-retaliatory reason for the employment action, therefore their burden of production has been met. As such, the burden is shifted back to the Plaintiff to adduce evidence that Defendant's proffered reason for her termination is merely a pretext for retaliation. *McCoy*, 492 F.3d at 557.

#### 2. Pretext

The Plaintiff can establish pretext by rebutting the non-retaliatory reason articulated by

the Defendant. *Id.* To meet this burden, Plaintiff must demonstrate that she would not have been terminated "but for" engaging in the protected activity. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). This is not the "causal link" step in the prima facie case. The burden on the Plaintiff here is more stringent. Plaintiff must reveal "a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Sherrod*, 132 F.3d at 1122.

Plaintiff asserts that the "unauthorized use" claim by Defendant is pretext for retaliation. As evidence of pretext, Plaintiff first offers that the proffered legitimate reason asserted by Defendant was never formally presented to Plaintiff. (Pl.'s Resp. at 9.) Next, Plaintiff claims that she did not commit an unauthorized use as she was transporting a child to school which was simply "effectuating the purpose for which she was hired." (Pl.'s Resp at 15.) In this same regard, Plaintiff claims that the conduct she was terminated for is common practice at DCS. (Pl.'s Resp. at 15.) Further, Plaintiff asserts that Blades participated in the decision to terminate Plaintiff and therefore the reason proffered for her termination is actually pretext for Blades true retaliatory motive. (Pl.'s Resp. at 9–10.)

Plaintiff's allegation, that Defendant never formally presented to her their legitimate reason for her firing, is not supported by the record. In fact, in Plaintiff's deposition, she asserted the reason for her firing as unauthorized use of a DCS vehicle along with her failure to answer and call in to dispatch during that use. (Def.'s Reply at 9.) Further, the record shows that in the termination letter from Joplin to Plaintiff, the term "unauthorized use" was used to exemplify her transgression and ultimate reason for termination. (Pl.'s App. at 73.) As such, Plaintiff's

contention concerning the presentation of the legitimate reason for firing is clearly erroneous and will not stand as evidence of pretext.

Plaintiff further contends that no unauthorized use was committed as she was simply doing her job by taking a child to school. Plaintiff's contention is, "yes, she deviated from her route, but the use of the bus was legitimate." (Pl.'s Resp. at 16.) Likewise, Plaintiff claims that such actions were common practice at DCS and therefore the fact that she was singled out and terminated is actually pretext for the true retaliatory reason for her firing.

Plaintiff's assertion that, "because she did her job there was no unauthorized use," is without merit. The Fifth Circuit has established that the *McDonnell Douglas* doctrine is not a "device which permits the [Court] to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities." *Elliot v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983). In many employment situations, the employer has established a system, procedures, or protocol, which the employee is required to follow when effecting their responsibilities. Here, DCS enacted procedures for certain reasons which the Court is not obligated to examine. *Id.* Plaintiff took a child to school, her ultimate goal, but failed to follow requirements of DCS protocol. She abandoned her assigned route and failed to contact or respond to dispatch. Moreover, Plaintiff was counseled and suspended for this conduct prior to her termination. (Def.'s Mot. at 9–10.) These disciplinary actions clearly would have put her on notice that her practice of deviating from her route was unwarranted. As such, the Court concludes that her use was in fact unauthorized as it did not comply with each facet required of a DCS driver.

Plaintiff's contention that she was singled out and fired for a common practice is also without merit. Plaintiff cannot establish that unauthorized use of a DCS bus was common, accepted, or that similarly situated employees were treated differently. Plaintiff has failed to provide evidence of drivers who like her deviated from their route and went to another unassigned school without punishment. Instead, Plaintiff offers the testimony of another driver who on a number of occasions stopped to get food in his DCS bus and was not reprimanded.[4] Plaintiff does not however, offer any evidence that this other driver deviated from his assigned route, that supervisors knew of the other drivers' deviation but failed to reprimand, or that other route deviations occurred while Joplin was area director. Without offering evidence to support facts of this nature, Plaintiff has failed to establish that unauthorized use of a DCS bus was common, accepted, or that similarly situated employees were treated differently. As such, Plaintiff has failed to establish that she was singled out and fired for a common practice. Therefore, this contention is inadequate to establish the existence of pretext.

In addition, Plaintiff claims that Defendant's asserted reason for termination is pretext because Blades was allegedly "part of the decision to terminate Williams." (Pl.'s Resp. at 9.) As evidence of this contention, Plaintiff offers three excerpts from her Appendix. The first of which involves Plaintiff's deposition in which she testified that Blades was in Joplin's office when

---

[4] The Declaration of this driver, Clarence Theus, is the subject of a separate motion filed by the Defendant. Defendant seeks to strike Theus' Declaration as undisclosed witness. However, in reaching its decision on this motion for summary judgment, the Court does not rely on this material that the Defendants seek to strike. Therefore, Defendants' Motion to Strike Theus' testimony is denied as moot. *See Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 230 (D. Conn. 2005) (wherein motions to strike evidence were denied as moot where the court did not use the evidence in their decision).

Joplin told Plaintiff that her employment was being terminated. (Pl.'s App. at 3.) The second refers to another excerpt from Plaintiff's deposition in which she testifies that no one gave her authority to deviate from her assigned route. (Pl.'s App. at 13.) Strangely, this section makes no reference to Blades or his participation in Plaintiff's termination. Plaintiff's final excerpt is also taken from her Deposition in which she testifies, without explanation, that Blades was part of the decision to terminate her. (Pl.'s App. at 43.)

Plaintiff does not offer any further evidence that would support her contention that Blades played a role in the decision to terminate her employment. Evidence of this nature, namely, Plaintiff's own testimony, is purely conjectural and cannot create a fact question without further support. *See Matsushita*, 475 U.S. at 586–87. Plaintiff's mere assertion of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Anderson*, 477 U.S. at 247–48.

Moreover, these assertions ignore the clear and unrebutted evidence submitted by the Defendant that Joplin made the decision regarding termination of Plaintiff and that Blades was not part of the decision and in no way influenced his decision. (Def.'s App. at 4.) Further, Joplin has expressed that at the time of the termination, he does not recall "knowing about any alleged sexual harassment or inappropriate physical contact by Blades against the Plaintiff. (Def.'s App. at 4.) The Fifth Circuit has established "that the disbelief of a witness's testimony is not sufficient to carry a plaintiff's burden." *Mato v. Baldauf*, 267 F.3d 444, 451–452 (5th Cir. 1995). Therefore, though Plaintiff may disagree with Joplin's assertions, to carry her burden of establishing pretext, she must offer more than her own testimony in opposition. Because she has

not done so, the Court finds that no pretext has been established and summary judgment is appropriate.

IV.  **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment..

**IT IS SO ORDERED.**

Signed this 7th day of April 2008.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE